**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MICHAEL J. FORTUNATO and
JIMMIE J. WILBUR, husband and wife,

    Plaintiffs,

v.                                                                        CASE NO: 8:04-cv-165-T-26MSS

WINDJAMMER HOMEBUILDERS, INC.,
LAKE JOVITA JOINT VENTURE and
LAKE JOVITA HOMEOWNERS ASSOCIATION, INC.,

    Defendants.
_____/

**O R D E R**

Before the Court are Defendant Windjammer Homebuilders, Inc.'s Motion for Partial Summary Judgment, statement of undisputed facts, supporting affidavits, depositions, and exhibits (Dkts. 59, 61, & 63-73), Defendant Lake Jovita Joint Venture's Motion for Partial Summary Judgment, supporting memorandum, and statement of undisputed facts with attachments (Dkts. 75, 76 & 77), Plaintiffs' Combined Opposition and statement controverting facts with attachments. (Dkts. 82 & 83).  Also before the Court are Plaintiffs' Motion for Partial Summary Judgment with attachments and statement of undisputed facts with attachments (Dkts. 53 & 54), Defendant Windjammer Homebuilders, Inc.'s Memorandum in Opposition, affidavits and exhibits (Dkts. 84, 85-

88 & 90), and Defendant Lake Jovita Joint Venture's Memorandum in Opposition, statement of undisputed facts, affidavits and exhibits.  (Dkts. 89 & 91).  After careful consideration of the submissions of the parties, the Court finds that genuine issues of material fact exist, thereby preventing entry of summary judgment for any party.

**Background**

This lawsuit arises from the Plaintiffs' purchase of a lot for construction of a home in a development known as Lake Jovita Golf & Country Club (Lake Jovita).  After moving into the completed home, the Plaintiffs experienced frequent flooding problems on their property.  Plaintiffs bring this action alleging violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. (ILSFDA), and state common law misrepresentation, trespass, nuisance, and breach of contract claims.  The following summary depicts the facts in the light most favorable to the non-moving parties with respect to the summary judgment motions now under consideration.

In May 1997, Defendant Lake Jovita Joint Venture (LJJV) contracted with Coastal Engineering Associates, Inc. (Coastal) to design, plan, and engineer the development of Lake Jovita.  Lake Jovita consists of a residential community of single family, villa, and condominium-type units, two eighteen-hole golf courses, a club house of 32,000 square feet, tennis facilities, a fitness center, and an Olympic-sized swimming pool.  Lake Jovita encompasses approximately 1,054 acres located in Pasco County, Florida, and St. Leo, Florida.

LJJV contracted with Simmons Construction Company, Inc. (Simmons) to serve as the general contractor for the infrastructure on the first phase of Lake Jovita. Simmons constructed and completed among other things the water distribution and drainage systems as well as the excavation work to meet the grade designations. LJJV sold various lots to each of nine selected builders to then construct residential homes in Lake Jovita. On January 8, 1999, LJJV contracted with Defendant Windjammer Homebuilders, Inc. (Windjammer) as one of the nine builders to purchase forty lots, including Lot 227, which is the subject property in this lawsuit.

LJJV sold Lot 227, located near Pond Q, to Windjammer for $85,000.00, for the purpose of constructing a home to then sell.[1] Thereafter, on November 15, 1999, Windjammer entered into a contract with the Plaintiffs Michael J. Fortunato and Jimmie J. Wilbur, husband and wife, to sell them Lot 227 and to construct a home on the lot. The purchase and sale agreement provided that for an additional $30,000.00, Windjammer would provide grading to insure the absence of water drainage problems, and that for an additional sum of $43,126.00, Windjammer would provide fill and excavating. Windjammer completed construction of the home in February 2001 and conveyed the property to Plaintiffs by a warranty deed at a closing on February 26, 2001. Plaintiffs moved into their new home in early March 2001.

---

[1] The closing occurred on January 26, 2000.

During frequent visits to the construction site, Plaintiffs never noticed any flooding problems with the exception of the spring of 2000 after a rainstorm. Plaintiffs were told that the flooding occurred because one of the drainage gates had been left shut during the rainstorm and were assured that the flooding would not recur. Plaintiffs continue to live in the home and have experienced flooding more than twenty-four times since March 2001 as a result of overflow from Pond Q and runoff from areas uphill of Lot 227. Flooding from Pond Q has reached as high as the wall of Plaintiffs' pool and has inundated half of Plaintiffs' back yard. Runoff from uphill areas flows in torrents over the Plaintiffs' driveway and front yard. On January 28, 2004, Plaintiffs filed this action pursuant to federal question jurisdiction and supplemental jurisdiction over state law claims.

### Interstate Land Sales Full Disclosure Act

Congress passed the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. (ILSFDA), in 1968 "to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually under water or useful only for grazing." Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444, 1447 (11th Cir. 1985). The ILSFDA, however, applies to the sale of lots, not just raw land; yet, not every sale or lease of lots is subject to the ILSFDA. Section 1702 enumerates the particular sales or leases of lots that

are exempt from the requirements of the ILSFDA, some of which, contend Defendants, are applicable in this case to relieve them of any liability.[2]

The exemptions in dispute include the "two-year completion" exemption, the "sales to builder" exemption, and the "less than twenty-five lots" exemption. Also contested is whether the builder is an agent of the developer pursuant to the ILSFDA and therefore cannot escape liability under the ILSFDA. LJJV takes the position that if any entity is liable, it is Windjammer, because Windjammer was not its agent, and Windjammer was the seller of Lot 227, not LJJV. Finally, both Defendants argue that the three-year statute of limitations bars this action, while Plaintiffs assert that equitable estoppel or equitable tolling apply to avoid the statute of limitations.

*Two-year Completion Exemption*

The ILSFDA applies to the sale of improved land where the seller is not obligated to construct a residential, commercial, or industrial building on the lot within two years. Winter, 777 F.2d at 1447 n.7. The two-year completion exemption found in §1701(a)(2) provides as follows:

---

[2] Plaintiffs are correct that Defendants have not raised any exemptions in the pleadings. Defendants counter that the "affirmative defenses" of failure to state a claim for relief act to preserve the exemptions and also that the denial of paragraphs 6, 11, 25, 27, and 28 preserve the exemptions. (Dkts. 84 at pg. 10 & 89 at pg. 10). Regardless of whether the exemptions were properly framed before the resolution of these motions for summary judgment, the Court has considered the exemptions on the merits at this stage of the proceedings.

> (a) Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to —
> (2) . . . the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years;

This exemption carves out any sale of a lot where the contract unequivocally requires the seller to build such a structure within two years from the signing of the contract for purchase. Id. at 1447. Defendants argue that the contract of sale between Windjammer and the Plaintiffs contains a true obligation to complete construction within two years, citing Marco Bay Assocs. v. Vandeuwalle, 472 So.2d 472 (Fla.Dist.Ct.App. 1985), and Samara Dev. Corp. v. Marlowe, 556 So.2d 1097 (Fla. 1990).

  The contract of sale at issue contains various clauses, some of which could be read to substantiate a holding that the contract was illusory in the sense that it does not contain an unwavering obligation to construct within two years. Specifically, the contract provides that the seller would commence and complete construction "as soon as practicable, subject to the availability of labor and supplies," and there is no liquidated damages provision for failure to complete construction by a date certain. Under Florida contract law, there must be an unconditional guaranty of completion within two years. Samara, 556 So.2d at 1099-1100, citing HUD 1984 Guidelines for Exemptions under the ILSFDA, 49 Fed. Reg. 31375, 31378); Schatz v. Jockey Club Phase III, Ltd., 604 F.Supp. 537 (S.D. Fla. 1985) (holding "unconditional commitment" under ILSFDA was not established by terms of contract that permitted extension of two-year completion date

based on conditions beyond the control of seller and that limited purchasers' remedies).

Because exemptions must be narrowly and strictly construed, see Samara at 1100-1101, this Court must err on the side of finding that the requirements for this exemption have not been set forth sufficiently to mandate its application at the summary judgment stage.

*"Sales to Builders" Exemption*

Another exemption under the ILSFDA applies to exclude the sale of lots to builders. Section 1702(a)(7) sets forth the exemption as follows:

> (7) . . . to any person who acquires such lots for the purpose of engaging in the business of constructing residential, commercial, or industrial buildings or for the purpose of resale or lease of such lots to persons engaged in such business;

The HUD Guidelines states that "[t]he sale or lease of lots to an individual who purchases the lots to have his or her own home built is not exempt under this provision." To the extent Windjammer acted as an agent of LJJV, the sale to the Plaintiffs would not appear to be exempt from the protections of the statute. Based on the record before this Court at the summary judgment stage, the Court is unable to find that the exemption would apply to the sale of Lot 227 to the Plaintiffs.

*"Less than Twenty-five lots" Exemption*

Section 1702(a)(1) provides that "the sale or lease of lots in a subdivision containing less than twenty-five lots" is exempted from the ILSFDA. Windjammer asserts that it is exempt from the ILSFDA because at the time Plaintiffs entered into the contract for sale with Windjammer, Windjammer owned less than twenty-five lots at

Lake Jovita.  Windjammer relies on the unreported case of Orsi v. Cookwood, No. 2:91cv744, 1192 WL 511406 (E.D. Va. Apr. 14, 1992), for the proposition that if fewer than twenty-five lots are acquired in a larger subdivision, the offer of lots may be exempt if there is neither identity of interest between the developer and the acquiring party (LJJV and Windjammer in this case) nor any concerted action constituting a common promotional plan.

Even assuming Orsi controls, the Court finds that genuine issues of material fact exist regarding the relationship between LJJV and Windjammer.  Although Windjammer may not have owned twenty-five lots at the time the contract between Plaintiffs and Windjammer was executed, the evidence shows that Windjammer was obligated to buy forty lots in the development of Lake Jovita.  Furthermore, the evidence shows that Windjammer sold 108 lots at Lake Jovita.  Based on the evidence taken in the light most favorable to Plaintiffs on this issue, this exemption does not apply.

*Windjammer as Agent of Developer*

The Court finds that viewing the evidence in the light most favorable to Plaintiffs on the Defendants' Motions for Summary Judgment, genuine issues of material fact exist as to whether Windjammer acted as an agent of LJJV for purposes of the ILSFDA.  Even Windjammer and LJJV disagree on the role played by each of them in the planning of Lake Jovita.  Consequently, this Court will not enter summary judgment for either Defendant based on this issue.

*Statute of Limitations*

The ILSFDA contains three-year statute of limitations periods with varying start dates. See 15 U.S.C. § 1711.[3] Section 1711 provides in its entirety as follows:

> **(a) Section 1703(a) violations**
> No action shall be maintained under section 1709 of this title with respect to—
> (1) a violation of subsection (a)(1) or (a)(2)(D) of section 1703 of this title more than three years after the date of signing of the contract of sale or lease: or
> (2) a violation of subsection (a)(2)(A), (a)(2)(B), or (a)(2)(c) of section 1703 of this title more than three years after discovery of the violation or after discovery should have been made by exercise of reasonable diligence.
>
> **(b) Section 1703(b) to (e) violations**
> No action shall be maintained under section 1709 of this title to enforce a right created under subsection (b), (c), (d), or (e) of section 1703 of this title unless brought within three years after the signing of the contract or lease, notwithstanding delivery of a deed to a purchaser.

---

[3] Prior to June 1, 1980, the ILSFDA contained a two-year statute of limitations for certain violations. See Sarfati v. Wood Holly Assocs., 874 F.2d 1523, 1524-25 (11th Cir. 1989). After the amendment, however, a statute of limitations period was extended on prior two-year cases to three years. Id.

-9-

Because Plaintiffs allege in their Complaint that Defendants violated section 1703(a)(2)[4] by making various misrepresentations regarding periodic flooding caused by Pond Q and runoff from other areas of the development, subsection 1711(a)(2) applies.  Thus, the statute of limitations expires in this case three years "after the discovery of the violation or after discovery should have been made by exercise of due diligence."[5]  Moreover, the

---

[4]   Section 1703(a)(2)(A-C) provides as follows:
    (a) Prohibited activities
    It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—
    (2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title—
    (A) to employ any device, scheme, or artifice to defraud;
    (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;
    (c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser; . . .

Section 1703(a)(2)(D) covers representations "that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed."

[5]   It is undisputed that the Plaintiffs entered into a contract for purchase with Windjammer on November 15, 1999.  This point in time would trigger the running of the limitations period for violations not alleged in this action.  See 15 U.S.C. §§1703(a)(1) & (a)(2)(D).  Had those violations been alleged, the statute of limitations would have expired in November 2002 absent any applicable equitable principles of tolling or estoppel.

principles of equitable estoppel and/or equitable tolling also apply.  See Medalie v. FSC Sec. Corp., 87 F.Supp.2d 1295, 1298 (S.D.Fla. 2000) (explaining "absolute bar" under *pre-1979* ILSFDA statute of limitations as interpreted in Cook v. Deltona Corp., 753 F.2d 1552 (11th Cir. 1985), as manifestation of legislative intent to avoid equitable tolling); see also Armbrister v. Roland Int'l Corp., 667 F.Supp. 802, 809-811 (M.D. Fla. 1987) (contrasting equitable tolling as grounded in fraudulent concealment of the harm and equitable estoppel as based on plaintiff's knowledge of basis for suit but foregoing right based on inducement of wrongdoer).

Although Defendants argue that the flooding of Lot 227 in the spring of 2000, which was seen by Plaintiffs, should trigger the running of the statute, Plaintiffs counter that Defendants lured them into believing the incident was caused by a storm drainage gate that was accidentally left closed— a one-time, nonrecurring event.  Plaintiffs also claim that Windjammer's "deliberate concealment of its failure to comply with Type C grading requirements" constitutes additional conduct sufficient to estop Windjammer from asserting the running of the statute of limitations.  Because the material facts tending to show when the discovery of the violations occurred, or should have occurred exercising due diligence, are in dispute, resolving the statute of limitations issue on summary judgment is inappropriate.

## State Law Claims

With respect to the state law claims under this Court's supplemental jurisdiction, the Court finds that genuine issues of material fact exist to prohibit the entry of summary judgment for any party.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendant Windjammer Homebuilders, Inc.'s Motion for Partial Summary Judgment (Dkt. 59) is **DENIED.**

(2) Defendant Lake Jovita Joint Venture's Motion for Partial Summary Judgment (Dkt. 75) is **DENIED.**

(3) Plaintiffs' Motion for Partial Summary Judgment (Dkt. 53) is **DENIED**.

(4) Plaintiff's Motion for Reconsideration of Order denying motion to strike affidavit testimony (Dkt. 99) is **DENIED** as moot.

(5) This case shall proceed to trial in accordance with prior orders of this Court.

**DONE AND ORDERED** at Tampa, Florida, on January 25, 2006.

s/
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record